**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:19CR213 AGF (SPM) |
| ) | |
| **ROLAND HILL,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Currently pending before the Court is Defendant Roland Hill's Motion to Suppress evidence seized from Hill's vehicle by law enforcement on February 4, 2019 (Doc. 29 & 30). The central issue raised in Hill's suppression motion is whether evidence seized from Hill's car at the time of his arrest on February 4th was the fruit of an unconstitutional search. The undersigned held an evidentiary hearing on November 18, 2019. Based on the evidence presented at the hearing and for the reasons set out below, the search of Hill's car did not violate the Fourth Amendment. As such, I recommend that Hill's motion to suppress be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Hill is charged in an indictment with possession with intent to distribute heroin and fentanyl (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). Hill was arrested on May 23, 2019, and made an initial appearance on the same day. He was arraigned on June 5, 2019. Through counsel, Hill requested and was granted until July 17, 2019, to file pretrial motions. Hill requested, and was granted, additional time to file pretrial motions

through September 30, 2019. On September 27, 2019, Hill filed the motion to suppress evidence and memorandum in support that is currently pending before the Court (Docs. 29 & 30). After conferring with counsel for the parties, the undersigned set an evidentiary hearing for November 5, 2019. The United States filed a response resisting the motion on October 21, 2019 (Doc. 36). On November 5, 2019, the parties filed a joint motion requesting that the evidentiary hearing be continued (Doc. 37). The request was granted, and the motion was continued to November 18, 2019.

At the evidentiary hearing, the United States offered testimony of Berkeley Police Officers Darren Shaw and Phillip Edmond. The United States also introduced Government Exhibits A, B, C and E, which were admitted into evidence. Defense counsel offered no additional witnesses but cross-examined Officers Shaw and Edmond and offered Defense Exhibits 1 and 2. Following the hearing, as discussed below, defense counsel offered a St. Louis County Towing and Inventory Form as an additional exhibit.

At the close of the evidentiary hearing, the parties requested and were granted time to request a transcript of the hearing and to file post-hearing briefs.  The transcript of the evidentiary hearing was filed on December 3, 2019 (Doc. 45).  Consistent with the scheduling orders entered, Hill's post-hearing brief was filed on December 31, 2019 (Doc. 51).  The United States filed its responsive brief on January 29, 2020 (Doc. 56).  The undersigned has carefully considered the evidence that was offered and admitted at the evidentiary hearing.  The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions. Based upon the evidence adduced at the hearing, the oral arguments made on the record, and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

## II.  FINDINGS OF FACT

During the early morning hours of February 4, 2019, Officer Darren Shaw, with the City of Berkeley Police Department, arrested Hill following a high-speed chase that took place over six miles on highways 170 and 270 in North St. Louis County. Shaw had been a police officer for approximately 8 months at the time of Hill's arrest.

### A. *The Car Chase and Arrest Of Hill*

The encounter between Hill and police started when Officer Shaw, who was on patrol, responded to a dispatch call to remove a subject who was allegedly trespassing at a Mobil gas station in North St. Louis County. Shortly before Officer Shaw arrived at the Mobil, he heard a gunshot. Immediately after hearing the shot, Officer Shaw heard a radio call for "rush traffic" from an officer stationed across from the Mobil. The call for "rush traffic" is a directive for everyone to stay off the radio until officers in the vicinity can discern what is going on.

When Officer Shaw arrived at the Mobil, he saw a vehicle with a passenger side door open. The vehicle was "creeping" slowly toward Officer Shaw and heading off the lot. At that point, Officer Shaw reported to dispatch that he observed a vehicle he suspected was involved in the shots fired. As the vehicle left the lot and turned onto the street, Officer Shaw activated his lights and siren in an attempt to curb the vehicle. However, the vehicle took off at a high rate of speed. Officer Shaw gave chase. He chased Hill's vehicle for approximately six miles, with Hill leading the officer onto highway 170, then onto highway 270, and then back onto highway 170. At one point during the car chase, Officer Shaw observed Hill throw an object from the car. The object hit the ground, causing sparks, which helped confirm Officer Shaw's suspicion that the thrown object was a gun. Officer Shaw simultaneously reported what he observed over the police radio. Hill eventually curbed the vehicle near 170 South and Scudder Road.

3

Because Hill led him on a high speed chase, and based on his observations before and during the chase, Officer Shaw decided to treat the encounter as a "felony car stop," meaning he got out his police car with his weapon drawn; instructed Hill to get out of the vehicle with his hands up; and instructed Hill to face away and walk backwards toward the sound of his voice. Hill, who was the sole occupant of the car, complied and shortly thereafter Officer Shaw handcuffed Hill, without incident, and placed Hill in the back seat of his police car.

Because Hill was the sole occupant of the vehicle at the time of his arrest, and because the car would have otherwise been left on the side of a highway, Officer Shaw testified it was his intent to have Hill's car towed to the police station. *See* Doc. 45, Hrng. Tr. at p. 17. Hill's car was subsequently towed to the police station and Officer Shaw transported Hill to the police station where he advised Hill of his *Miranda* rights, questioned Hill about the events leading up to the car chase, and obtained Hill's consent to search the car. *See* Govt. Ex. E.

Officer Shaw later prepared a police report in which he documented the events leading up to and following Hill's arrest. During cross-examination, defense counsel explored inconsistencies between Officer Shaw's written report and his in-court testimony. While those inconsistencies highlighted the officer's relative inexperience, they did not impact the overall credibility of Officer Shaw's testimony. Officer Shaw's testimony regarding the events leading up to his initial encounter with Hill, the car chase, and his arrest of, and subsequent interactions with Hill was bolstered by both documentary evidence (including photographs) and the testimony of Corporal Phillip Edmond.

### B. *The Pre-Tow Search of Hill's Vehicle*

Corporal Phillip Edmond from the City of Berkeley and Officer Reichert, who arrived shortly after Hill was placed into Officer Shaw's patrol car, searched Hill's car before it was

towed to the police station. During the search, the officers found suspected narcotics and alerted Officer Shaw to its presence. Shaw seized the suspected narcotics and documented them on an evidence sheet and in his written police report. *See* Deft. Exh. 1.

Although the record is not entirely clear, based on the hearing testimony, it appears the officers' collective purpose in conducting a pre-tow search of Hill's car was part investigatory and part inventory. For example, on direct examination, Officer Shaw testified,

> Q (By Mr. Mehan): What was your intent?
> A: To do a search and inventory.
> Q: And why would you do that?
> A: Just for the purpose of the vehicle's contents, possibly for another weapon that's in the vehicle, so we inventory after arrest.
> Q: And who is it -- what agency or business did you call to actually tow the car?
> A: Doc's Towing
>
> …
>
> Q (By Mr. Mehan): What would happen -- once Doc's showed up, the towing company, what would happen?
> A: Evidence in there, possible evidence.
>
> …
>
> THE WITNESS: After Doc's showed up, the vehicle was towed to the police station.
> Q (By Mr. Mehan): All right. But you had already -- Edmond had already gone through the car; right?
> A: Edmond had already gone through the car.
> Q: In the hope -- in the plan of it being towed?
> A: Yes.
> Q: In the plan of the inventory by the policy of Berkeley Police Department?
> A: Yes.

Doc. 45, Hrg. Tr. at p. 16-18.

Although Officer Shaw testified the search done by Corporal Edmond was an ***inventory*** search, on cross examination, Officer Shaw had to concede that, in his police report, he described the pre-tow search as a "search incident to arrest" instead of an "inventory search." *Id.* at 19-22.

5

Officer Shaw also speculated that Corporal Edmond and Officer Reichert possibly searched for a weapon after hearing his radio call outs during the car chase. *Id.* at 30-31.

On the morning of Hill's arrest, Corporal Edmond was working as the shift supervisor for the Berkeley Police Department. As such, he, and presumably other officers who responded to the scene, heard the broadcast of Officer Shaw's pursuit of Hill. Corporal Edmond's account of the pursuit and the events leading up to Officer Shaw's pursuit of Hill corroborated Officer Shaw's testimony.

When he arrived on the scene, Corporal Edmond saw that the suspect was in custody; so, he began to "help out" with the inventory of the vehicle prior to its being towed. Corporal Edmond could not recall who called the tow company but believed he was present when the towing company arrived to tow the car. Corporal Edmund, who indicated he had been with the Berkeley Police Department for ten years, credibly testified that his search and inventorying of Hill's vehicle was performed in a manner consistent with the procedures typically followed by the Berkeley Police Department.

Specifically, Corporal Edmund testified:

A. That's the procedure, so the vehicle is not [sic] being towed, it was just involved in a crime, just to make sure the tow truck driver or nothing inside that vehicle was going to be of criminal nature that's going to be then towed to the tow yard.

…

Q. And again, describe for the Court why you were looking in the car?
A. Because that's the normal procedure when a vehicle is going to be towed, we have to conduct the inventory of that vehicle.
Q. You mentioned before this was for the protection of the driver of Doc's?
A. Correct.
…
Q. There could be a body in there, there could be anything?

6

> A. Correct. It was unknown circumstances of just being involved in a pursuit, it was also involved in criminal activity, so we can't let a civilian tow truck driver take possession of a vehicle without inventorying it.
> Q. Right. And then it was towed to the station?
> A. Correct.

*See* Doc. 45, Hrg. Tr. at p. 46-47.

Corporal Edmond further explained that officers in the Berkeley Police Department typically document any damage observed to the vehicle on the bottom of a tow sheet, *see* Deft. Exh. 2. But, if anything of a criminal nature is found in the vehicle, it is seized by law enforcement and placed in the police report. *Id.* at p. 47-48. This is precisely what the officers did prior to having Hill's vehicle towed from the side of highway 170. *Id.* at p. 50-51. Finally, Corporal Edmond testified that it was a mistake for Officer Shaw to refer to the side-of-the-highway search in his police report as a "search incident to arrest" because it was actually an inventory search of the vehicle. *Id.* at 52. Corporal Edmond further testified that, ultimately, Officer Shaw's inaccurate description of the side-of-the-road search as a "search incident to arrest" is a mistake that he, as the supervising officer, should have caught before signing off on Shaw's report. *Id.*

Following the hearing, defense counsel submitted Missouri Department of Revenue Form 4569, which indicates it is a form to be used when a tower has been authorized by law enforcement to perform a tow. *See* Doc. 51-1. Defendant argues that this Form demonstrates that Corporal Edmond was untruthful when he testified about the City of Berkeley's tow practices and procedures. *See* Doc. 51 at p. 7. When the undersigned questioned Corporal Edmond at the hearing about whether the Berkeley Police Department had separate inventory forms associated with tows, he testified:

> A. Not with our department, not a physical form that I have seen. If it is out there, Your Honor, I haven't come across it in almost ten years of being there.

7

>    Q. So this is not a form that your department routinely uses when conducting an inventory of a vehicle that is going to be towed?
>    A. No, ma'am. Again, if it's like illegal drugs found in it or a gun, then I alert that officer if I conduct the inventory or that officer and they will document it on the evidence sheet and they'll then put that inside of there of the police report.
>    Q. And so was this search conducted and documented in a manner that is consistent with the way that your police department routinely conducts and documents these types of searches?
>    A. Yes Ma'am.

*See id.*, p. 52-53.

The Form offered by the defense does not, on its face, appear to mandate its use by City of Berkeley Police Officers. In addition, defense counsel failed to attach any affidavit or other attestation explaining when and how or by whom the Form ***must*** be used. Even if the officers involved in this search were ***required*** to use the Form, the Form's existence does not contradict or call into question the hearing testimony of Corporal Edmond. Corporal Edmond's testimony acknowledged that there may well have been an inventory form available, but his department's practice for ten years was to follow the procedure he outlined at the hearing. Because I found Corporal Edmond's testimony to be credible and consistent with the other evidence of record, I credit his testimony regarding the City of Berkeley's towing practices and procedures related to towing.

### III. CONCLUSIONS OF LAW

Hill does not dispute that Officer Shaw had probable cause to stop and arrest him. Rather, Hill contends only that the officers unlawfully searched his car prior to having it towed. The Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. For a search to be reasonable, the government generally must obtain a warrant supported by probable cause before "physically intruding on constitutionally protected areas" or otherwise searching areas or items in which an individual has a reasonable expectation

8

of privacy. *Florida v. Jardines*, 569 U.S. 1, 8-10 (2013). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S.Ct. 2473, 2482, (2014).

Here, Hill points to Officer Shaw's description of the search as a "search incident to arrest" and argues that the search failed to satisfy the requirements for a valid search incident to arrest set out in *Arizona v. Gant,* 556 U.S. 332 (2009). Hill's point that the search conducted by Corporal Edmond and others does not satisfy the *Gant* requirements for a valid search incident to arrest has merit. However, the facts and circumstances of the search conducted in this case requires consideration of two different exceptions to the warrant requirement of the Fourth Amendment: the automobile and inventory search exceptions.

The "automobile exception" to the warrant requirement "'authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.'" *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). *See also United States v. Shackleford,* 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband."). Probable cause to search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994) (Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched."). The Supreme Court has described probable cause as "a practical, nontechnical conception" that is based on "common sense conclusions about human behavior." *Gates,* 462 U.S. at 231. It is a "fluid

9

concept" that turns on "the assessment of probabilities in particular factual contexts" and is not "readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. In determining whether probable cause exists, courts must analyze the totality of the circumstances surrounding the intrusion. *Id.* at 238.

The Supreme Court has also recognized inventory searches as an exception to the warrant requirement of the Fourth Amendment. *See Colorado v. Bertine,* 479 U.S. 367, 372 (1987). Under this exception, "a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody." *United States v. Williams,* 777 F.3d 1013, 1016 (8th Cir. 2015). As the Eighth Circuit has held, to be valid, "[t]hese searches must comply with standardized police procedures." *Id.* (quoting *United States v. Mayfield,* 161 F.3d 1143, 1145 (8th Cir. 1998)). Although police may not conduct an inventory search solely for investigative purposes, *see United States v. Taylor,* 636 F.3d 461, 465 (8th Cir. 2011), in conducting inventory searches police may "keep their eyes open for potentially incriminating items they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *United States v. Harris,* 795 F.3d 820, 821 (8th Cir. 2015). The United States bears the burden of showing that its conduct complied with the inventory search exception to the warrant requirement. *Taylor*, 636 F.3d at 464.

### A. *The Pre-tow Search Was a Lawful Inventory Search*

Based on the foregoing factual findings, the pre-tow search of Hill's car was a permissible inventory search that did not require probable cause to satisfy the Fourth Amendment. The evidence of record establishes that at the time Hill was taken into custody, his car was on the side of the highway and the undersigned infers from the evidence presented it would have posed a potential threat to other motorists if not removed. Although they did not say

so explicitly, the testimony of Officer Shaw and Corporal Edmond suggested that it was within the discretion of the arresting or responding officers to decide whether to have the vehicle towed. Having exercised the discretion to have the car towed, Corporal Edmond and Officer Shaw both testified that the policy of the Berkeley Police Department was to inventory a vehicle's content after an arrest prior to towing. Corporal Edmond further explained that officers in the Berkeley Police Department typically document any damage observed to the vehicle on the bottom of a tow sheet; but, if anything of a criminal nature is found in the vehicle, it is seized by law enforcement and placed in the police report. This is precisely what the officers did prior to having Hill's vehicle towed from the side of Highway 170.

Officer Shaw's hearing testimony and written police report certainly suggest that he may have had mixed motives in desiring a search of Hill's car. Indeed, Officer Shaw's testimony on direct and cross examination at times suggested he was unable to distinguish between an inventory search and an investigatory search. However, "the ultimate touchstone of the Fourth Amendment is reasonableness" and "[a]n action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403-404 (2006).

Under the facts of this case, it is of no moment if Officer Shaw did have *some* investigatory motive in desiring the pre-tow search. Officer Shaw did not conduct the search—it was conducted by two other officers. Officer Shaw indicated he had no prior discussion with the officers who conducted the search, although he presumed the officers would be searching for another firearm given the events immediately preceding Hill's arrest. Given those events, it seems very likely that the officers conducting the search in this case were "keep[ing] their eyes open for potentially incriminating items as they conducted the inventory search in preparation for

11

the tow." *See Harris,* 795 F.3d at 821. However, the evidence of record also makes clear that, in contrast to the consensual search of the vehicle officers conducted at the police station, investigating a crime was not the sole purpose of the pre-tow search conducted by Corporal Edmond. As such, the fact that officers conducting the inventory search may have also been on the lookout for incriminating items does not prevent this Court from finding that the search fell within the inventory search exception to the Fourth Amendment warrant requirement. *See id.*

### B.  *The Officers Collectively Had Probable Cause To Search Hill's Car*

The pre-tow search of Hill's car also falls within the automobile exception to the warrant requirement because the officers involved in the car chase and search of Hill's vehicle, collectively, had probable cause to search Hill's car pursuant to the automobile exception to the warrant requirement of the Fourth Amendment. Based on the foregoing factual findings, Officer Shaw was responding to a call to remove a trespasser when he heard a shot fired from the location of the area he was responding to. The call for "rush traffic" immediately following the shot alerted Officer Shaw to the possibility that something far more serious than trespassing was afoot. Upon arriving at the gas station, Officer Shaw saw Hill's car "creeping" off the lot with the passenger door open. The car then suddenly took off at a high rate of speed and continued to travel on and off two different highways for six miles even after Officer Shaw activated his lights and siren to try to curb the vehicle. While in pursuit, Officer Shaw saw an object he believed to be a firearm thrown from the vehicle. Consistent with this belief, Officer Shaw observed sparks fly as the thrown object hit the pavement.

The evidence at the hearing demonstrated that Officer Shaw broadcasted the foregoing events as they took place, and those broadcasts were heard by other officers, including Corporal Edmond, who responded to the scene. Given the totality of the circumstances, the responding

12

officers, including Corporal Edmond, had probable cause to believe that Hill's vehicle contained evidence of a firearm-related crime. *See United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (recognizing that "'[w]hen multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication'") (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)).

For all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED,** that Hill's Motion to Suppress physical evidence (Doc. 29) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set before the **Honorable Audrey G. Fleissig, on March 23, 2020 at 9:00 a.m**.

*[signature]*

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of February, 2020.